FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 APR 23 PM 7:29

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND | |
| v. | Criminal Action No. ELH-18-360 |
| WILLIAM V. DENT<br>*Defendant* | |

## MEMORANDUM

In this case, the Court must determine whether a federal officer properly removed to federal court criminal charges lodged against him in a Maryland state court.

In the Circuit Court for Anne Arundel County, Maryland, on May 18, 2018, the State of Maryland charged William V. Dent, a civilian federal officer assigned to the United States Air Force Office of Special Investigations ("AFOSI"), with multiple crimes. The charges include assault in the first and second degree of Saifuddeen Acosta on March 26, 2018; reckless endangerment; use of a firearm in the commission of a crime of violence; and wearing a handgun upon his person. ECF 1-2 ("Indictment"). Dent removed the case to federal court on July 3, 2018, pursuant to 28 U.S.C. § 1442. ECF 1. The State has moved to remand. ECF 5.

An evidentiary hearing has been scheduled concerning the motion to remand, in accordance with 28 U.S.C. § 1455(b). In anticipation of the hearing, on March 25, 2019, defendant filed a motion in limine to preclude the expert testimony of Master Sergeant Matthew McLain. He is Special Agent, Superintendent, Basic Training Division, United States Air Force Special Investigations Academy. ECF 21 (the "Motion"); ECF 24-1 at 6-7 ("Biography"). The State opposes the Motion. ECF 24. Defendant replied. ECF 26.

The State first notified defense counsel on December 3, 2018, of its intent to offer McLain as an expert in AFOSI "training, tactics, and authority." ECF 24-1 at 2. The State also provided

1

defense counsel with a copy of McLain's curriculum vitae (*id.* at 6-7) and a copy of the memorialization of his approval concerning observations as to Acosta's video recording of the incident. *Id.* at 3-5. Further, the State notified defense counsel that it "anticipates that Special Agent McLain's testimony will relate to those facts delineated in his attached synopsis[.]" *Id.* at 2.

According to the State, it designated McLain in response to notice from the defense of its intention to call Retired Special Agent Susan Howell to opine that, at the relevant time, Mr. Dent was acting within his authority as an AFOSI officer. ECF 24 at 2-3.

For the reasons that follow, I shall deny the Motion in part and grant it in part.

## I. Standard of Review

Pursuant to Federal Rule of Evidence 104(a), the court is responsible for determining "preliminary questions concerning the qualification of a person to be a witness" and "the admissibility of evidence," including the admissibility of expert testimony under Federal Rule of Evidence 702. With regard to expert testimony, it is well settled that "[t]he party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence." *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *Cady v. Ride-Away Handicap Equipment Corp.*, 702 Fed. App'x 120, 124-25 (4th Cir. 2017); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Casualty Co. v. Therm-O-Disc., Inc.*, 137 F.3d 780, 783 (4th Cir. 1998); *Casey v. Geek Squad ® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011).

Fed. R. Evid. 702 provides that a properly qualified expert witness may testify regarding technical, scientific, or other specialized knowledge in a given field if the testimony would assist

the trier of fact in understanding the evidence or to determine a fact in issue. The rule "was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F. 3d 257, 261 (4th Cir. 1999).

Rule 702, which governs expert testimony, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, 509 U.S. at 597, the Supreme Court made clear that scientific evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." The Court explained that expert scientific testimony must be grounded "in the methods and procedures of science," and it must be something more than subjective belief or unsupported assumptions. *Id.* at 589–90. Moreover, the evidence or testimony must be relevant to the extent that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591; *see also Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017); *United States v. Forrest*, 429 F.3d 73, 80–81 (4th Cir. 2005). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court extended the principles pertaining to scientific expert testimony to other expert testimony requiring technical or specialized knowledge.

Under *Daubert*, 509 U.S. at 597, the trial court serves a "gatekeeping role," by making pretrial determinations "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. This gatekeeper role helps to ensure that the expert's testimony

3

"rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *see Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 577 (4th Cir. 2017). "In performing this gatekeeping role, a district court 'is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.'" *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II)*, 892 F.3d 624, 631 (4th Cir. 2018)).

As to reliability, *Daubert* articulated five factors that the trial court should consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003).

As a whole, the factors are meant to ensure that "an expert, whether basing his testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. However, the factors are meant to be "helpful, not definitive," and not all factors necessarily apply in a given case. *Id.* at 151; *see Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019); *Nease*, 848 F.3d at 229. Indeed, the Supreme Court has said that the factors are not a "checklist." *Kumho Tire*, 526 U.S. at 150.

Rule 702 does not relieve the party seeking admission of meeting the requirements of other applicable rules. This includes Rule 403's instruction that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

4

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See Casey*, 823 F. Supp. 2d at 341. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F. R. Evid. 401.

Of import here, testimony that states a legal conclusion is not admissible. *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 512 (D. Md. 2014); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011); *United States v. Chapman*, 209 Fed. App'x. 253, 269 (4th Cir. 2006); Fed. R. Evid. 704 advisory committee note. Additionally, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible. *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). However, an expert witness may testify as to the ultimate issue so long as the foundation is adequate. *See United States v. Harris*, 46 F.3d 1127 (4th Cir. 1995). But, the Fourth Circuit has noted that "[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Id.*

With this background, I turn to consider the admissibility of Mr. McLain testimony.

## II. Discussion

### A.

McLain is the Superintendent of the Basic Training Division of the United States Air Force Special Investigations Academy in Glynco, Georgia. ECF 24-1 at 6. According to his curriculum vitae, McLain "mentor[s] and train[s] AFOSI Agent Trainees through the Basic Special Investigations Course (BSIC) location on the Federal Law Enforcement Training Center." *Id.* McLain also "develops curriculum, investigative aides and processes for field level application, and provides guidance on command standards." *Id.* Prior to becoming Superintendent in April of 2017, McLain worked for the Basic Training Division as an instructor for nearly two years. *Id.*

5

McLain has received extensive training on diverse subjects. Of relevance here, he completed a "Counter Threat Operations Course" at Fort Dix in 2009; a "Military Counterintelligence Course" at the Joint Counterintelligence Training Academy in 2010; an "Advanced General Criminal Investigations Course" at the United States Air Force Special Investigations Academy in 2013; a "Law Enforcement Instructor Training Program" at the Federal Law Enforcement Training Centers in 2015; and a "Firearms Instructor Training Program" at the Federal Law Enforcement Training Centers in 2016. *Id.* Additionally, McLain served as a special agent on a counterintelligence team in Kandahar, Afghanistan from March 2013 to October 2013. *Id.* He has had several other overseas assignments as well. *Id.*

Mr. Dent has not disputed McLain's expertise, and I am satisfied that he is qualified to testify as to AFOSI training, tactics, and authority. *See, e.g., United States v. Perkins*, 470 F.3d 150, 156-57 (4th Cir. 2006) (concluding a sergeant with 14 years of experience, including time as a training officer, corporal, and sergeant, could have been offered as an expert police witness to testify in excessive force case).

### B.

Defendant concedes that testimony as to the scope of the defendant's authority would be relevant. ECF 26 at 3-4, 4 n.3. Indeed, defendant intends to call his own expert witness, retired Special Agent Susan Howell, to testify on the scope of defendant's authority. *Id.* at 3. Certainly, on this basis, fairness dictates that the State would be entitled to call an expert as well.

However, defendant claims that McLain's synopsis did not address the scope of Mr. Dent's authority. *Id.* at 3. Further, he contends that the State did not provide information "on Agent McLain's probable testimony as to Defendant's authority" until the Opposition. *Id.* at 4 n.3. There, the State addressed Sections 4.3 and 5.13 of the AFOSI Manual. *Id.* Therefore, defendant

6

contends that the Court should not consider McLain's testimony regarding the scope of defendant's authority. *Id.*

Defendant provides no authority for excluding McLain's testimony on this basis. The State did not mislead the defendant. The State disclosed to the defense that it intended to offer McLain as an expert in AFOSI authority. Further, it notified defense counsel only that it "*anticipates* that Special Agent McLain's testimony will *relate to those facts* delineated in his attached synopsis[.]" *Id.* at 2. Although the synopsis did not directly address the AFOSI Manual, testimony as to Sections 4.1.1, 4.3, and 5.13 of the AFOSI Manual would certainly relate to the facts in the synopsis. Accordingly, McLain may testify as to the proper scope of defendant's authority.

### C.

The State seeks to offer McLain's opinions on the threat posed by Mr. Acosta and the tactics used by Mr. Dent in response. But, defendant contends that McLean's opinions are irrelevant because, at the motion to remand stage, the Court must defer to the defendant's version of the events.

The federal officer removal statute provides for the removal of a "civil action or criminal prosecution commenced in a State court" against (1) a federal officer (2) acting "under color of such office," and (3) raising a federal defense. 28 U.S.C. § 1442(a)(1); *Mesa v. California*, 489 U.S. 121, 139 (1989).

To raise a colorable federal defense, the defendant need only allege a plausible federal defense. *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). The defense need not be a "clearly sustainable defense," as such a requirement "would defeat the purpose of the removal statute[.]" *Jefferson Cty. v. Acker*, 527 U.S. 423, 432 (1999). In assessing a defendant's allegations, a court must construe the defendant's alleged facts as "if those facts were true." *North*

*Carolina v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990). Nevertheless, the factual allegations must "support" a defense. *North Carolina v. Cisneros*, 947 F.2d 1135, 1139 (4th Cir. 1991). That is, they must enable a court to conclude that the defendant has alleged a plausible federal defense. *See Todd*, 245 F.3d at 693.

Dent seems to have raised a Supremacy Clause Immunity defense. Accordingly, the Court must determine whether defendant plausibly alleges that in performing an authorized act, he "did no more than what was necessary and proper for him to do." *Com. of Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988). A defendant's actions can be necessary and proper if predicated on a mistaken but reasonable belief in the existence of an "exigency" or "emergency." *Id.* at 745. When determining whether a defendant's mistake was reasonable, a court "must rest not only on the subjective belief of the officer but also on the objective finding that his conduct may be said to be reasonable under the existing circumstances." *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *see Wyoming v. Livingston*, 443 F.3d 1211, 1220 (10th Cir. 2006); *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004); *Long*, 837 F.2d at 745.

It is certainly true that the Court must credit the defendant's "theory of the case" and that he "need not win his case before he can have it removed." *Texas v. Kleinert*, 855 F.3d 305, 313-14 (5th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 642 (2018). However, defendant's factual allegations, taken as true, must plausibly allege a federal immunity defense. Accordingly, McLain's testimony is relevant insofar as it assists the Court in determining whether defendant's factual allegations support his federal immunity defense.

The Court is not an expert in terrorism, such as vehicular terror attacks. Although a terrorist threat may be obvious in some cases, it may not be in others. Therefore, McLain's testimony as to

8

whether Mr. Acosta's driving, as described by Mr. Dent, indicated a legitimate concern as to an imminent vehicular terror attack may assist this Court in conducting its jurisdictional analysis.

Further, I note that in his submissions, Mr. Dent repeatedly cites his "training" to justify his actions. *See, e.g.*, ECF 1 (citing his "training" eight times in six pages); ECF 22 at 3. Plaintiff has asserted that he reasonably believed that Mr. Acosta posed a threat to human safety "[b]ased on his knowledge, experience, and training," thereby placing his training at issue. ECF 1 at 4. It is relevant whether, based on AFOSI training, an AFOSI agent could have reasonably believed that Mr. Acosta's alleged behavior indicated an imminent terrorist attack or threat to human life.

However, McLain's testimony as to whether Mr. Dent employed proper policing techniques is not relevant to the Court's jurisdictional determination. "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). In this case, any dispute over policing techniques is not pertinent to the purpose of federal officer immunity. Therefore, the State's expert may not opine on that topic.

### III. Conclusion

For the foregoing reasons, I shall grant the defendant's Motion in part and deny it in part. An Order follows.

Date: April 23, 2019

/s/
Ellen Lipton Hollander
United States District Judge